UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| VS. | ) | CR No. 06-0096ML |
| | ) | |
| MIGUEL PAVAO | ) | |

# MOTION TO SUPPRESS

Now comes Miguel Pavao, the Defendant in the above captioned matter, and moves this Honorable Court pursuant to Rule 41 of the Federal Rules of Criminal Procedure to suppress all evidence seized from his person and his car during his encounter with the Warwick Police on September 6, 2006. The police came into contact with Mr. Pavao for traffic violations but searched his person without the requisite cause, suspicion or warrant. After seizing a hand gun from Mr. Pavao's person the police proceeded to search his car with no further cause than the arrest for the firearm possession. As a result of these searches, the police seized a .32 caliber handgun, quantities of marijuana, cocaine, and prescription pills, other drug paraphernalia, and an amount of US currency. All evidence seized in this case flowed from the initial traffic stop and illegal pat frisk search of Mr. Pavao and therefore must be excluded by this Court. Even if the Court finds the pat frisk appropriate, Mr. Pavao's arrest for the firearm cannot justify the further search of his car. Mr. Pavao also submits the attached memorandum in support of this motion.

Respectfully Submitted
Miguel Pavao,
By and through his counsel

/s/ Kevin J. Fitzgerald
Assistant Federal Defender
10 Weybosset St., Ste. 300
Providence, RI 02903
(401) 528-4281
FAX 528-4285
kevin_fitzgerald@fd.org

CERTIFICATION

I hereby certify that a copy of this motion was delivered by electronic notification to Mary Rogers, Assistant United States Attorney on November 17, 2006.

/s/ Kevin J. Fitzgerald

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| VS. | ) | CR No. 06-0096ML |
| | ) | |
| MIGUEL PAVAO | ) | |

---

MEMORANDUM IN SUPPORT OF MOTION TO SUPPRESS

I. Facts

On September 6, 2006, Miguel Pavao suffered a flat tire less than a half mile from his home. As he continued on West Shore Road in Warwick toward his home, he passed Officer Rathbun, a Warwick police officer parked in his cruiser, who saw him driving on the flat tire. Rathbun started out to stop Mr. Pavao, but did not catch up until he had pulled into his driveway at 2335 West Shore Road. When Rathbun got out of his cruiser, Mr. Pavao was at his front door fumbling with his keys. Rathbun told Mr. Pavao to get back into his car.

Officer Rathbun double checked the flat tire and suspected that Mr. Pavao was driving under the influence. He asked why Mr. Pavao was driving on the flat tire. Mr. Pavao told him he was just trying to get home. He took Mr. Pavao out of the car at that point to make a closer inspection of him on suspicion of DUI. He did not smell any alcoholic beverage. Instead, Rathbun noticed that Mr. Pavao was nervous. He also noticed a bulge on Mr. Pavao's right side, along his waistline, and a black nylon case hanging down below his jacket, consistent with a cell phone case attached to Mr. Pavao's belt.

Two other officers arrived at Mr. Pavao's home; Officers Bulis and Myer. Officer Rathbun then decided to pat frisk Mr. Pavao for officer safety. He patted down Mr. Pavao and determined that the black nylon case hanging on his belt, which caused the bulge, was indeed a cell phone and case. He continued to search, however, and felt another object behind the phone, which he recognized as a gun butt. Rathbun then removed a handgun and holster from Mr. Pavao's waistband. He cuffed Mr. Pavao and placed him in the rear of his cruiser.

Robin Stansell, Mr. Pavao's aunt, watched most of this interaction from outside and inside of the house. She was at the home with her husband babysitting Mr. Pavao's two children. At one point while outside, Officer Rathbun told her to go inside the home. Later, Rathbun came to the door and asked her if she knew anything about Mr. Pavao's gun. She did not. He told Stansell that Mr. Pavao was under arrest and she asked to speak with him about arrangements for the children. She spoke to Mr. Pavao while he was cuffed inside the cruiser.

Officers Myer and Bulis searched the car. They confiscated some suspected marijuana, cocaine and various prescription pills. The police believed that some of the cocaine was in powder form and some was crack cocaine. After they completed their search, the police had the vehicle towed from Mr. Pavao's home.

## II. Argument

The Fourth Amendment of the United States Constitution protects individuals from unreasonable searches and seizures at the hands of the government. U.S. CONST. Amend. 4. A warrantless search or seizure is per se illegal. *Katz v. United States*, 389 U.S. 347, 357 (1967). Police officers may, however, conduct brief investigatory stops when they have specific articulable facts which reasonably lead them to conclude that criminal activity is afoot. *Terry v. Ohio*, 392 U.S. 1, 20 (1968); *United States v. McKoy*, 428 F.3d 38, 39 (1st Cir. 2005). The police officer must have a further reasonable and objective basis to believe that the person is armed and dangerous to escalate the intrusive investigatory stop into a pat-frisk, a search, for weapons. *Terry*, 392 U.S. at 24; *McKoy*, 428 F.3d at 39. The Court determines the validity of the search under *Terry* based on the totality of the circumstances. *United States v. Arvizu*, 534 U.S. 266, 273 (2002). The government cannot meet the burdens to justify the entirety of this stop and search because the police did not possess any specific articulable facts showing Mr. Pavao was armed or dangerous.

### A. The police did not possess any articulable facts which support a reasonable or objective belief that Mr. Pavao was armed and dangerous.

Officer Rathbun saw Mr. Pavao driving on a flat tire at 1 am on a rainy night and

followed him to his home. Rathbun caught up to Mr. Pavao in front of his home in his driveway. Mr. Pavao was trying to unlock the door. Rathbun suspected that Mr. Pavao was driving under the influence because he was driving on the flat, he swerved while driving, and he failed to stop when Rathbun used his signal lights. Rathbun put Mr. Pavao back into the driver's seat of his car and then double checked the state of the left front tire. It was flat. These facts do support the initial stop for driving infractions.

Officer Rathbun asked Mr. Pavao why he failed to stop; he said he was just trying to get home. Rathbun took Mr. Pavao back out of the car to observe him for the DUI. Mr. Pavao looked nervous. He did not note the smell of any intoxicating beverage. He did note, however, a bulge on Mr. Pavao's right side waist and a black nylon case hanging down from under his coat consistent with a cell phone case. Officers Bulis and Myer arrived and then Rathbun decided to search Mr. Pavao for his safety. The combination of these facts does not rise to a level justifying the subsequent search of Mr. Pavao's person.

This was a traffic stop for moving violations and suspected DUI. Nothing about those infractions supports a reasonable belief that Mr. Pavao was armed. *Compare United States v. Lott*, 870 F.2d 778, 784-85 (1st Cir. 1989) (further frisk search not allowed pursuant to traffic violations), *with United States v. Trullo*, 809 F.2d 108, 110 (1st Cir. 1987) (bulge in pocket enough to warrant pat search when combined with suspected drug trafficking because weapons are tools of the trade). Once Officer Rathbun confirmed the black nylon case was a cell phone, the suspicion based on the bulge ceases. In all, affirmation of this search of Mr. Pavao's person on these facts, traffic violation combined with cell phone bulge and nervousness, essentially allows a *Terry* frisk in every suspected DUI case due the commonality of facts. *See McKoy*, 428 F.3d at 40-41 (not accepting government's argument which would establish automatic frisk of everyone who is nervous and commits a traffic violation in a high crime area). The combination of factors here does not show a reasonable suspicion that Mr. Pavao was armed and dangerous and therefore the *Terry* pat frisk was not warranted.

B. The police searched Mr. Pavao's vehicle without cause or warrant.

As stated, a search without probable cause or warrant is presumed unreasonable and illegal. The government, per Officer Rathbun's report, justifies the search of Mr. Pavao's car on the basis of a search incident to Mr. Pavao's arrest for possession of a firearm. *See Thornton v. United States*, 541 U.S. 615, 623-24 (2004) (allowing search of car incident to arrest of recent occupant); *see also Belton v. New York*, 453 U.S. 454 (1981) (allowing search of car incident to arrest of occupant). The facts of this case, however, distinguish it from *Thornton*.

In *Thornton*, a uniformed police officer in an unmarked cruiser saw Thornton actively slow down to avoid driving next to the cruiser. 541 U.S. at 617-18. Thornton's evasive driving peaked the officer's curiosity and he pulled into a parking lot to allow Thornton to pass. The officer read the licence plate and determined it belonged to a different vehicle. The officer then followed with the intent to stop Thornton, but he pulled into a lot, parked, and walked away from the vehicle. The officer parked also and confronted Thornton as he tried to walk away. He was nervous and sweating when told the plates did not match, but told the officer he had no drugs or weapons on his person or in the car. Thornton then <u>consented</u> to a pat frisk of his person. Feeling a bulge in Thornton's front pocket, the officer again asked if he had any contraband. Thornton volunteered package of marijuana and cocaine from his pocket. The officer arrested Thornton, cuffed him and placed him into the cruiser, and then searched the car. He found a handgun under Thornton's driver's seat. The Supreme Court affirmed the search of Thonton's car under the *Belton* theory of a vehicle search incident to arrest. *Thornton*, 541 U.S. at 623-24. The facts creating suspicion and leading to arrest of Thornton, however, are wholly different from this case.

Mr. Pavao did not engage in any of the evasive behavior exhibited by Thornton. Thornton drove evasively, dumped his car after seeing police, and attempted to get away from the car and the police as quickly as he could. Mr. Pavao acted in a manner conspicuously consistent with a DUI suspect. Also, Thornton consented to a search of his person and produced contraband for the police upon request. No consent to search exists here. Further, Thornton's actions relative to his vehicle support an inference that he had contraband in his car. The Court cannot draw like inferences from Mr. Pavao's actions. Mr. Pavao got out of his car and proceeded to the door of his home completely oblivious to the presence of Officer Rathbun. This

behavior is consistent with his statement that he was just trying to get home on a flat tire and with Rathbun's suspicion of DUI.

Unlike *Thornton*, Officer Rathbun establishes the connection between Mr. Pavao's arrest for possession of the firearm and his car by putting him into the vehicle. Thornton's actions and production of cocaine and marijuana led that officer to conclude that the car was part and parcel of that incident and arrest. Also, Thornton left the car in a public parking lot. Here we have Mr. Pavao pulling into his own driveway unaware of the police. While the car would necessarily be part of a driving offense, including a DUI, the police did not arrest Mr. Pavao for a driving offense. Mr. Pavao's possession of the firearm has no direct connection to his car; Rathbun put Mr. Pavao into the vehicle. The lacking connection between Mr. Pavao's arrest and his car distinguish this case from the standard search incident to arrest upheld in *Thornton*.[1]

In *Thornton*, Justice Scalia reminds us of the original intent behind *Belton*; a safety sweep. The affirmation of the search in *Belton* stemmed from *Chimel v. California*, 395 U.S. 752 (1969). *Chimel* established the limits of a search incident to arrest as the area immediately within the control of the arrestee for weapons to ensure the safety of the officers. 395 U.S. at 457. *Belton* applied that standard to the arrest of an automobile occupant and allowed the search of the entire interior of the vehicle. 453 U.S. at 460. Justice Scalia points out in his Thornton concurrence that the search of the car always takes place after the individual is secured elsewhere and the true safety concern presented in *Chimel* ceases to exist. *Thornton*, 541 U.S. at 626-27 (J. Scalia, concurring) (unless the prisoner slips out of his cuffs, escapes the police car, and retrieves a weapon from his own vehicle to use on the police officers). In fact and practice, the searches of automobiles incident to arrest have little to do with safety and everything to do with collection of additional evidence. *See id.* at 629-32 (J. Scalia, concurring). The Court should consider that the search of Mr. Pavao's car was not a search incident to arrest for safety, in the spirit of *Chimel*, but in fact a search for additional evidence without a warrant or cause.

---

[1]Further, the government cannot justify their search of the car on an inventory theory either. Under these circumstances the actual seizure of Mr. Pavao's car was not warranted based on the firearm offense.

III.Conclusion

The Court should grant Mr. Pavao's motion and suppress the seized weapon and contraband controlled substances. Officer Rathbun seized the firearm from Mr. Pavao's person without the necessary reasonable and objective belief that he was armed and dangerous. Absent that cause the pat frisk violated Mr. Pavao's Constitutional rights under the Fourth Amendment and the Court should suppress the firearm and all evidence subsequently seized. If the Court finds that initial search and arrest valid, declining to grant the initial suppression request, the search of Mr. Pavao's car still violated his Constitutional rights under the Fourth Amendment. The government cannot justify the search of the car as a search incident to his arrest for possession of the firearm. Unlike *Thornton*, the only connection between Mr. Pavao's arrest and the car was created by Officer Rathbun, and therefore too tenuous to support the search. The search of Mr. Pavao's car, therefore, was illegal regardless of his arrest for the weapon and the Court should suppress all items seized from the vehicle.

Respectfully Submitted
Miguel Pavao,
By and through his counsel

/s/ Kevin J. Fitzgerald
Assistant Federal Defender
10 Weybosset St., Ste. 300
Providence, RI 02903
(401) 528-4281
FAX 528-4285
kevin_fitzgerald@fd.org

CERTIFICATION

I hereby certify that a copy of this motion was delivered by electronic notification to Mary Rogers, Assistant United States Attorney on November 17, 2006.

/s/ Kevin J. Fitzgerald