IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | Cr. No. 06-096ML |
| | ) | |
| MIGUEL PAVAO | ) | |

**GOVERNMENT'S OBJECTION TO DEFENDANT'S**
**MOTION TO SUPPRESS EVIDENCE**

Comes now the United States of America, by and through its attorneys, Robert Clark Corrente, United States Attorney for the District of Rhode Island, and Mary E. Rogers, Assistant U.S. Attorney, and hereby objects to the Defendant's Motion to Suppress for the reasons stated in the accompanying memorandum.

Respectfully submitted,

UNITED STATES OF AMERICA

By its Attorneys,

ROBERT CLARK CORRENTE
United States Attorney

/s/ MARY E. ROGERS
MARY E. ROGERS
Assistant U.S. Attorney
RI Bar #3107
U.S. Attorney's Office
50 Kennedy Plaza, 8th FL
Providence, RI 02903
Tel (401) 709-5000
Fax (401) 709-5001
email mary.rogers@usdoj.gov

CERTIFICATION OF SERVICE

On this 28th day of November, 2006, I caused the Government's Objection to the Defendant's Motion to Suppress Evidence and Memorandum in Support of said Objection to be filed electronically and it is available for viewing and downloading from the ECF system.

Electronic notification:

Kevin J. Fitzgerald
Assistant Federal Defender
10 Weybosset ST., Suite 300
Providence, RI 02903
(401) 528-4281
FAX 528-4285
kevin_fitzgerald@fd.org

/s/ MARY E. ROGERS
MARY E. ROGERS
Assistant U.S. Attorney
RI Bar #3107
U.S. Attorney's Office
50 Kennedy Plaza, 8th FL
Providence, RI 02903
Tel (401) 709-5000
Fax (401) 709-5001
email mary.rogers@usdoj.gov

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | Cr. No. 06-096ML |
| | ) | |
| MIGUEL PAVAO | ) | |

**GOVERNMENT'S MEMORANDUM IN RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS EVIDENCE**

The Defendant has brought a motion to suppress the evidence in this case. Pavao argues that the police "came into contact with Mr. Pavao without the requisite cause, suspicion or warrant." The defendant then argues that everything that flows from the initial stop and arrest must be suppressed. The defendant's arguments fail on several grounds. The initial stop was clearly permissible under Terry v. Ohio, 392 U.S. 1 (1968). The arrest of the Defendant for carrying a concealed weapon without a permit was supported by probable cause and the search of the Defendant's vehicle after the arrest was permissible as a search incident to a lawful arrest. Thornton v. United States, 124 S.Ct. 2127 (2004).

## I. FACTS

The indictment in this case contains four counts, charging the Defendant with possession of cocaine and cocaine base (crack cocaine) with the intent to distribute, possessing a firearm in furtherance of a drug trafficking crime and possessing a firearm after having been convicted of a felony.

In the early morning hours of September 6, 2006, Sgt. Richard Rathbun of the Warwick Police was parked in a marked police unit monitoring traffic on West Shore Road. It was dark and the weather was poor; the roads were wet because it was raining which further reduced

visibility. At approximately 1 a.m., Sgt. Rathbun heard a loud rumbling noise. The Sgt. waited until a vehicle came into view. The Sgt. saw that the vehicle's left front tire was flat, consistent with the noise that he was hearing. He pulled out behind the defendant and activated the police cruiser's lights. Sgt. Rathbun noted that he was traveling at 50 miles an hour and yet the vehicle, driven by the Defendant Miguel Pavao, was pulling away instead of pulling over. The vehicle also swerved over into the oncoming lane. It then made an abrupt U-turn and pulled into what turned out to be the Defendant's yard. The Defendant got out of his car and began walking towards the building. The officer suspected that the Defendant was under the influence of either drugs or alcohol and told the Defendant to return to his car. The Sgt. had to repeat the command twice before the Defendant complied. The Defendant was advised that he would be charged with several motor vehicle violations and was asked why he had not stopped for the police. The Defendant stated that he was just trying to get home. The Defendant was extremely nervous; visibly shaking. The Sgt. noted a bulge in the Defendant's waist band and saw a black nylon item hanging down. After police back up arrived, the Sgt patted Pavao down. The Sgt. located a cellular telephone, as well as a handgun in the Defendant's waist band. The Defendant admitted that he did not have a permit to carry a concealed weapon. The weapon had a round in the chamber and 5 more bullets in the ammunition clip. The police searched the Defendant's vehicle. Approximately 160 grams of marijuana was found, along with 14.56 grams of crack cocaine and 12.06 grams of a mixture of both powder and crack cocaine inside a prescription bottle. A make shift crack pipe was located, as well as two digital scales. Also located were various prescription medication bottles, including a bottle for Vicodin, in the name of John Lawrence, 5325 Flat River Road, Coventry, Rhode Island, another prescription bottle issued to

Brennan of Warwick, Rhode Island, a bottle of Dewar’s scotch, and prescription bottles in Miguel Pavao’s name, with an address of Wesleyan Avenue, Warwick, Rhode Island.

## II. ARGUMENT

### A. The Initial Stop of Pavao was Lawful

#### (1) Pavao Was Lawfully Detained Pursuant To A "Terry" Investigatory Stop

The Supreme Court has long recognized that police must be free to pursue "legitimate investigative function[s]". Terry v. Ohio, 392 U.S. 1, 21 (1968). "A police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even thought there is no probable cause to make an arrest." Id. The Supreme Court has also held that these investigatory powers also include stopping motor vehicles upon reasonable suspicion. See, e.g., Michigan v. Long, 463 U.S. 1032, 1049 (1983). The two prong test enunciated in Terry requires a determination as to "whether the officer’s action was justified at its inception, and whether the action taken was reasonably related in scope to the circumstances which justified the interference in the first place." Terry, 392 U.S. at 20. "[T]he police officer must be able to point to specific and articulable facts, which taken together with rational inferences form those facts, reasonably warrant the intrusion. United States v. Kimball, 25 F.3d 1, 6 (1st Cir. 1994)(quoting Terry, 392 U.S. at 21). The second prong requires an examination of the totality of the circumstances, see United States v. Cruz, 156 F.3d 22,26 (1st Cir. 1998), while keeping in mind that "it would be unreasonable to require that police officers take unnecessary risks in the performance of their duties. Terry, 392 U.S. at 23.

The initial stop by Sgt. Rathbun was clearly supported by reasonable suspicion. As set

forth in the "Facts" section of this memorandum, Sgt. Rathbun noted an individual driving on a flat tire, in poor traveling conditions. When confronted with a marked police cruiser with its lights activated, the Defendant, instead of pulling over as one would reasonably expect from a law abiding citizen, instead fled; he began speeding and driving erratically, crossing over into the opposite lane of travel, until he abruptly made a U-turn and drove into a yard. The Defendant then got out of his car, and instead of returning to his vehicle when told to by the police, continued to walk towards a building. The Sgt had to repeat his command to return to the car before the Defendant did so. As stated in Terry, the police are not required to take unreasonable risks in the performance of their duties. Sgt. Rathbun legitimately told the Defendant to return to his vehicle, so that the officer would have some control over the situation. When back up officers arrived, Sgt. Rathbun, who had noticed a black nylon item at the Defendant's waistband, where a firearm is often tucked, conducted a Terry frisk of the Defendant. Police are not required to place their lives at risk, and hazard a guess as to whether the bulge in the Defendant's waistband is a firearm, a telephone, or a child's toy. The rationale underscoring Terry frisks is officer safety and what constitutes a reasonable intrusion on an individual. In this case, the officer spotted the bulge, patted down and removed first a cellular telephone and then a fully loaded firearm with a round in the chamber, all from the Defendant's waistband. Rather than being an unwarranted intrusion on Mr. Pavao, this is a text book case of a proper Terry frisk.

The Defendant next appears to confuse the articulable facts that are necessary for the initial vehicle stop with the articulable facts needed to conduct a Terry pat down search for weapons. The initial stop of the Defendant's vehicle was amply supported by probable cause

that the Defendant was operating under the influence; and the law only requires articulable suspicion. The articulable facts for patting down Mr. Pavao are not the same as those that justified the initial vehicle stop, nor is that required. The bulge Sgt. Rathbun noted in the Defendant's waistband supplied ample articulable reasons to pat him down.

The Defendant's bald, unsupported claim in his memorandum of law that he was unaware that the police were trying to stop him, is irrelevant. Even if the Defendant were to testify and somehow establish that he was unaware that the police had been pursuing him with lights activated and commands to return to the car, and that his speeding and swerving into the opposite lane of travel and abrupt U-turn and pulling into a yard instead of a driveway were not efforts to evade the police (an interesting hypothesis since, while the Defendant claims his behavior was "conspicuously consistent with a DUI suspect, the Defendant does not claim he was under the influence and thus presumably had all of his faculties intact), none of this changes the fact that the police actions were objectively reasonable in light of the circumstances. Sgt. Rathbun observed an individual behaving as if he were driving under the influence, and thus had an objectively legitimate reason to stop the Defendant. Whether the Defendant was aware or unaware that the police were chasing him is irrelevant to the issue before this Court.

Based upon the above, there is no question that this quantity and quality of information more than satisfies that necessary for an officer to make a Terry stop. Once Sgt. Rathbun located a concealed weapon on the Defendant's person and ascertained that the Defendant did not have a permit to carry that weapon, probable cause existed to make an arrest. "An officer may conduct a warrantless arrest as long as there is 'probable cause to believe that the suspect has committed or is committing a crime.'" United States v. Bizier, 111 F.3d 214, 216-17 (1st

Cir. 1997). Probable cause exists if "'at the time of the arrest, the facts and circumstances known to the arresting officers were sufficient to warrant a prudent person in believing that the Defendant had committed or was committing an offense.'" Id. at 217. "There is no requirement that th[is] belief be shown to be necessarily correct or more likely true than false." United States v. Feliz, 182 F.3d 82, 87 (1st Cir. 1999), cert. denied, 120 S. Ct. 942 (2000). At the time the Defendant was placed in handcuffs the Detective was in possession of sufficient facts to support a finding of probable cause that the Defendant had committed a crime. The Defendant appears to suggest that the police should have had probable cause to believe that Pavao was transporting contraband at the time he was detained. That is not so. Police may detain and arrest suspects for historical as well as ongoing crimes. Bizier, 111 F.3d at 216-17. In this case, the Sgt. was well within his right to stop the Defendant to investigate whether he was operating under the influence and then arrest once probable cause was established for the crime. In sum, the facts that the police then knew were "'sufficient to warrant a prudent person in believing'" that Pavao was violating the law.

**B. The Search Of The Defendant's Vehicle Was Constitutionally Permissible.**

The Supreme Court has upheld warrantless searches of vehicles under circumstances providing ample opportunity to obtain a warrant. South Dakota v. Opperman, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000; Cady v. Dombrowski, 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706; Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419; Cooper v. California, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730. In addition, the Court has recognized that warrantless searches may be proper even where there is no immediate danger that the car will be removed from the jurisdiction. United States v. Chadwick, 433 U.S. 1, 12, 97 S.Ct. 2476, 53

L.Ed.2d 538 (1977); South Dakota v. Opperman, 428 U.S. at 367, 96 S.Ct. 3092; Cady v. Dombrowski, 413 U.S. at 441-42, 93 S.Ct. 2523. The automobile exception rests less on the exigency of the specific situation than on "the diminished expectation of privacy which surrounds the automobile." United States v. Chadwick, 433 U.S. at 12, 97 S.Ct. at 2484; See South Dakota v. Opperman, 428 U.S. at 367-69, 96 S.Ct. 3092; Cady v. Dombrowski, 413 U.S. at 441-42, 93 S.Ct. 2523; Cardwell v. Lewis, 417 U.S. at 589-91, 94 S.Ct. 2464. See generally United States v. Moore, 562 F.2d 106, 111-13 (1st Cir. 1977), Cert. denied, 435 U.S. 926, 98 S.Ct. 1493, 55 L.Ed.2d 521 (1978); United States v. Pappas, 600 F2d 300, 304 (1st Cir 1979).

In New York v. Belton, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), the United States Supreme Court held that when a police officer has made a lawful custodial arrest of an occupant of an automobile, the Fourth Amendment allows the officer to search the passenger compartment of that vehicle as a contemporaneous incident of the arrest. In Thornton v. United States, 541 U.S. 615, 124 S.Ct. 2127, 158 L.Ed.2d 905, 124S.CT. 2127 (2004), the Supreme Court extended their holding in Belton, and concluded that Belton governs even when an officer does not make contact until the person arrested has left the vehicle. In Pavao's case, the police officer clearly was entitled to stop the Defendant, and then pat him down for the officer's safety after seeing the bulge in the Defendant's waistband. The Defendant's consent was neither needed nor required by the law. Once a gun was located and the Defendant had admitted that he had no permit to carry the weapon, there was probable cause to arrest the Defendant. The police were entitled, under both Belton and Thornton to search the vehicle, which they did.

In Thornton, Justice Rehnquist pointed out that in United States v. Robinson, 414 U.S.

218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973), a case dealing with the scope of the search of the arrestee's person, the court had rejected a suggestion that " 'there must be litigated in each case the issue of whether or not there was present one of the reasons supporting the authority' " to conduct such a search. 453 U.S., at 459, 101 S.Ct. 2860 (quoting Robinson, supra, at 235, 94 S.Ct. 467). Similarly, because "courts ha[d] found no workable definition of the 'area within the immediate control of the arrestee' when that area arguably include[d] the interior of an automobile and the arrestee [wa]s its recent occupant," 453 U.S., at 460, 101 S.Ct. 2860, the Court set forth a clear rule for police officers and citizens alike, that "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." Thornton, at 2131. In so holding, the Court "placed no reliance on the fact that the officer in Belton ordered the occupants out of the vehicle, or initiated contact with them while they remained within it. The Court found that there was no basis to conclude that the span of the area generally within the arrestee's immediate control is determined by whether the arrestee exited the vehicle at the officer's direction, or whether the officer initiated contact with him while he remained in the car. Id. at 621. "In all relevant aspects, the arrest of a suspect who is next to a vehicle presents identical concerns regarding officer safety and the destruction of evidence as the arrest of one who is inside the vehicle. An officer may search a suspect's vehicle under Belton only if the suspect is arrested. See Knowles, supra, at 117-118, 119 S.Ct. 484. A custodial arrest is fluid and "[t]he danger to the police officer flows from the fact of the arrest, and its attendant proximity, stress, and uncertainty," Robinson, supra, at 234-235, and n. 5, 94 S.Ct. 467 (emphasis added). See Washington v. Chrisman, 455 U.S. 1, 7, 102 S.Ct. 812, 70 L.Ed.2d 778

(1982) ("Every arrest must be presumed to present a risk of danger to the arresting officer"). The stress is no less merely because the arrestee exited his car before the officer initiated contact, nor is an arrestee less likely to attempt to lunge for a weapon or to destroy evidence if he is outside of, but still in control of, the vehicle. In either case, the officer faces a highly volatile situation. It would make little sense to apply two different rules to what is, at bottom, the same situation. In some circumstances it may be safer and more effective for officers to conceal their presence from a suspect until he has left his vehicle. Certainly that is a judgment officers should be free to make. The Supreme Court rejected Thornton's claim that officers should be unable to search a car's passenger compartment in the event of a custodial arrest. The Court held that this would potentially compromise officer safety and place incriminating evidence at risk of concealment or destruction. "The Fourth Amendment does not require such a gamble." Id. at 2131. The Court went on to note, that "To be sure, not all contraband in the passenger compartment is likely to be readily accessible to a "recent occupant. It is unlikely in this case that petitioner could have reached under the driver's seat for his gun once he was outside of his automobile. But the firearm and the passenger compartment in general were no more inaccessible than were the contraband and the passenger compartment in Belton. The need for a clear rule, readily understood by police officers and not depending on differing estimates of what items were or were not within reach of an arrestee at any particular moment, justifies the sort of generalization which Belton enunciated. Once an officer determines that there is probable cause to make an arrest, it is reasonable to allow officers to ensure their safety and to preserve evidence by searching the entire passenger compartment." Id. at 2132.

## III. CONCLUSION

For all of the foregoing reasons, Defendant's motion to suppress should be denied. The government further submits that, even if the facts as alleged by the Defendant in his memorandum of law to the Court are accepted as true, the Defendant's argument to suppress the evidence still fails based upon the law. Therefore, there is no need for testimonial evidence in this case.

Respectfully submitted,

UNITED STATES OF AMERICA,

By its Attorneys,

ROBERT CLARK CORRENTE
United States Attorney

/s/ MARY E. ROGERS
MARY E. ROGERS
Assistant U.S. Attorney
RI Bar #3107
U.S. Attorney's Office
50 Kennedy Plaza, 8th FL
Providence, RI 02903
Tel (401) 709-5000
Fax (401) 709-5001
email mary.rogers@usdoj.gov

CERTIFICATION OF SERVICE

On this 28th day of November, 2006, I caused the Government's Objection to the Defendant's Motion to Suppress Evidence and Memorandum in Support of said Objection to be filed electronically and it is available for viewing and downloading from the ECF system.

Electronic notification:

Kevin J. Fitzgerald
Assistant Federal Defender
10 Weybosset ST., Suite 300
Providence, RI 02903
(401) 528-4281
FAX 528-4285
kevin_fitzgerald@fd.org

/s/ MARY E. ROGERS
MARY E. ROGERS
Assistant U.S. Attorney
RI Bar #3107
U.S. Attorney's Office
50 Kennedy Plaza, 8th FL
Providence, RI 02903
Tel (401) 709-5000
Fax (401) 709-5001
email mary.rogers@usdoj.gov